The property in dispute in this case is of very small value in itself, but considerable to the parties ; and the questions involved are important. The cause has been ably argued and every thing brought out which learning and ingenuity could devise.
Four questions are made,
1st. Whether under the will of Robert Hurst any and what rights vested in Sarah Bunch, the wife of complainant, she dying before the testator’s wife ?
2d. What interest her husband has in those rights, he having survived her and administered on her estate ?
3d. Whether there has been sufficient proof of the *286 execution, contents and loss of the deed from Bunch to. ^^in, to establish that deed ?
4ill. Whether under the circumstances of the case, the Court ought to sanction a deed obtained in the manner and for the consideration stated ?
The argument unon the first point was very full, and a great many cases were cited. I have examined all of them which are within my reach. But I presume it is not necessary to go into a full discussion of the distinctions in the numerous cases. Some of them were decided upon the apparent intent of the testator, controlling the particular words of the clause of the will on which the question arose; others upon other principles of a peculiar nature, not applicable to this case. But upon a careful review of the whole doctrine, it docs appear to me to be settled, that if a legacy be given to one person for life, (called A. for example) and after the death of A. to B. the legacy to B. is vested on the death of the testator, and it does not lapse by the death of B. during the life of A. See 2 Fonbl. 366, 7, and the note K. and the cases there cited, particularly the following, to wit, Tunstall vs. Brachen, Ambl. 167; Dawson vs. Killet, 1 Bro. C. C. 119; Jeale vs. Tichenor, Ambl. 703; Barnes vs. Allen, Bro. C. C. 181; Monkhouse vs. Holme, Bro. C. C. 298; Jackson vs. Jackson, 1 Vesey, 217; see also other cases not cited by Fonblanque, Perry vs. Woods, 3 Ves. jr. 404. Some of those cited are directly in point; for the legacies are to A. for life, and after his decease then to B. and though B. died before A. they were held to bo vested and transmissible legacies. This’is precisely the case before the Court. The defendant’s counsel insisted that the estate being given to the testator’s wife, for her life, and after her death to the nephews and nieces of the testator by name ' and Sarah Bunch, one of the devisees and legatees, dying in the lifetime.of the wife, her share of the legacy lapsed. But this objection has been repeatedly considered and overruled, as appears by the cases cited. And indeed it never did prevail in any case, standing singly *287 on that ground. And there , do not in my opinion exist any peculiar circumstances in the case before the Court to differ it from the plain one so often decided. The re.petition of the words « I give, devise and bequeath,” in this will do not alter the case. They ate always implied, and the expression of that which is implied cannot vary the law. The defendant’s counsel attempted to shake the authority of the case of Barnes vs. Allen, by stating that it was declared by the master of the rolls in the case of Perry vs. Woods, (3 Ves. jun’r, 204,) that Barnes vs. Allen was erroneously decided, and had been overruled ; but upon examining* the case of Perry vs. Woods, that does not appear to be the case. In the case ef Barnes & Allen there were two points : 1st. Whether the legacies to the two legatees dependant upon a life estate, lapsed by the death of one of the legatees during' the life estate. 2d. Whether these legatees Bad a tenancy in common or as joint tenants with survivorship, one of them having actually died during the life estate. Upon the first point there was no doubt. It was agreed to be a vested and transmissible legacy and did not lapse* On the second point the Judge was of ¡opinion, that the legacy was in joint tenancy, and that the survivor took the whole. The case of Perry and Woods was held by the master of the rolls a tenancy in common, and that the share of one of the legatees who died during the life of the tenant for life, was transmissible to his representatives. But the case of Barnes and Allen had been quoted in the argument to prove that under such circumstances the estate was a joint tenancy. It was then that the master of the roils examined the case, and said that Barnes and Allen was not in the least like the one before him, (Perry and Woods) on that point; and quoted.the words in the registers book to shew the difference, which is stated in the note.
On a full examination of both these cases, I am of opinion that they are authorities in point to establish the first question in the case, before the court, to wit.: that in at legacy to A« and aftqr bis dead), to B. if B. die# before.: *288 nevei’theless a good vested and transmissible legacy. In the case before the court, there can be no doubt, that the legacy to Sarah the niece of the testator was a tenancy in common. The words share and share alike, used in the will, create a tenancy in common, jj anthority were necessary to establish this, the case of Perry and Wood’s is also decisive on this point. For there those words were decreed to create a tenancy in common, tho’ coupled with the word survivor. The case of the heirs of W. H. Drayton, vs. the heirs of John Drayton, deceased, in our own court, ’93, is one of those where the death of one of the legatees, after the death testator, and before the death of the intermediate holder for life (or on a contingency) does not occasion a lapse, tho’ words of survivorship were added. The general interest was chiefly regarded. The case of Mackay and Alstor decided in this court was relied upon by defendant, but nas no application to the question before the court. The devise there is to Harriet Makay and to her heirs, &c. when she attains the age of 21 years, or day of marriage, &c. But if she should die before the above mentioned period, then a devise over. The court in deciding that case said the words of the will were so strong to shew that the time the devise was to vest, was annexed to the substance of the gift, as to leave no room to doubt of the testators intention. The words when and if are not to be got over. And this is the true difference as to legacies of personal property, ■where the time is-annexed to the legacy itself, and not t.o the payment ofit, and the legatee dies before the time, the legacy is lapsed. Otherwise, if the time be annexed only to the payment ofit. The defendant also cited and relied on the case of Hall and Jermin, 1 Atk. 302. This was where a precise time was fixed for raising a legacy, and legatee died before the time. So in Elten and Elten, 3 Atk. 504. The event on which legacy was to depend, never happened at all. So in Bradly and Powell, Talb. 193, it was a marriage settlement case, and the contingency never occurred. The case of *289 Manning and Herbert in Ambler, 575, is against tbe defendant, for it was decreed that the legacy was vested, tho’ the legatee died before the life estate was ended. In the case of Batsford and Keppell. 3 Vesey, jun. 363. The legacy depended on a contingency. Bennet and Seymore, Ambl. 521. The words of the will shewed the intent was that legacy should not vest till the death of the life tenant. The case of Cock and Barrish in 1 Vern. 425, is totally different, one df the legatees died in the life of testator ; and survivorship was established. 1 Bro. 119, which is Dawson and Killet, is against defendant. Billingsby and Wills. 3 Atk. 219, was decided on the express words of the will. The result is, that I am decidedly of opinion, that the legacy to Sarah was a vested legacy, held as tenancy in common, and was transmissible to her representatives, notwithstanding her death before tenant for life, the widow of testator.
The second question for consideration, is, what interest the husband has in the rights of his deceased wife, to the property in question. It is unnecessary now to go at large into this question. The law has been settled by several recent decisions. The husband would have been entitled as the law stood formerly to the whole of this legacy, tho’ not reduced to possession during coverture. Its being vested in interest, though not in possession, was sufficient to entitle him as survivor. But our act of 1791 has been decided to have introduced a new rule, incompatible with the old and to have established that where the marital rights have not completely attached, by the husband’s reducing the personal estate of his wife to possession during the co-verture, the husband is entitled to no more than a third part of the wife’s estate not so reduced to possession, where there are children of the marriage, and a moiety where there are no children. This law applies to the question before us; and as there are no children, consequently the husband, the complainant is entitled to a moiety. 3d. The third question for consideration is, whether there has been sufficient proof of the execution, *290 contents and loss of the deed, alleged to have betón made by Bunch, conveying his right under the will of Robert Hurst to Filbin. I have reviewed the evidence wjtli great care and minutenes's. From it there cannot be any doubt that some -sort of deed was executed by B mtcb, to whom it was read; and that it was intended to he a conveyance of the rights of Bunch in Robert Hurst’s estate. The existcnce of a deed then 1 must consider unade out. But I do not consider the contents of tlie¡ deed so clearly established. It is remarkable that though this deed was subscribed by four witnesses, only one of them has been examined. And he expressly states that -he has no recollection of the contents of the deed. He knows that it contained no description of the property intended to be conveyed, no enumeration, no schedule $ he. says it was intended to convey all Bunch’s rights in Robert Hurst estate. But did the deed convey them* .and in what way ? Absolutely, modiftedly, or for a limited time? He cannot answer. He says be docs-not recollect the contents of the deed, and so imperfect is his recollection that I16 docs not know, if Bunch signed his name, or put his mark to the deed. Upon the whole I am not entirely satisfied as to the contents. But if what the witness lias said as tb the contents and execution of the deed, were more satisfactory in-the last.particular, I Irave a greater objection unsatisfied. The rule-of evidence is, that where-a*deedtis>proved to have been lost, or casually destroyed, or in the hands of the 'adverse party, parol evidence may be allowed to prove the existence and the contents. None of .the cases go beyond this; neither those produced by the defendants counsel, Ambler, 249. 3 Term Report, 16a. Nor those'which I have since-examined upon this doctrine, go beyond the rule-so laid down. Sec 1st Ves. sen. 234, Cooks vs. Hellier. Ibid, 387, 9. Whitfield, vs. Fausset, 96, 503, 4, 5. Cole, vs. Gibson. 2 Vesey, sen. 38, 111. Glym, vs. Bank of England. How does this rule apply to the mse before-the court? It is.not alleged that the deed *291 jjft question is- either lost or mislaid or destroyed. On the, contrary it' is expressly stated- that the defendant placed it in the hands of a Mr. Malcy, and it is added that he is gone to Georgia, and that he carried the deed with him, and that Some unsuccessful’ attempts been naadc to procure-the-deed from. him. But what was the nature of these attempts* ha3 not been explained. Nor has any commission been- sent to examine Makay about the deed, or what has-become of it. Yet Mákay was the defendants own- agent and depository, and his suppression of the deed, is attributable to his •principal.* To suffer parol evidence of the existence and contents of a deed to be given under such oircum--Stancesi where there is no pretence of loss, would be extending the rule far beyond any thing that has been heretofore done. And in my opinion it Would be mischievous in a high degree to do so. It' might open* a door to frauds and impositions of gredt- extent. I will not therefore enlarge the rulte* which .1?think is already sufficiently extensive- for all useful pubp<j|cs, and least of all in< a- case where there is-much- grouifo for suspicion, as-well in tliis-as in other-respects.
Frormthis viewpf the case then if will'- appear, that I do nbt think a case has been made out, on which I could decree for the defendant, even if I had been satisfied as to tile* manner and the substance of the contract between Búnch and Filbin. But* the truth iswhen * I examine all the facts disclosed, and: which raise the 4th question in- this-'cause, I am not prepared to give my sanction to such a contract. The testimony- has-, been so fully stated before, that I will not'recur tbit' again particularly., Switl confine myself to a few remarks.
Four-witnesses subscribed this deed, conveying this-small property. I will not say that this is- a badge of •fraud, but I* will say that this excessive caution marks a conviction, that the party had a suspicion that tilings were not perfectly right, not perfectly equal and fair.. Therefore he endeavoured to make a great shew oí *292 strength by multiplying witnesses. I will not 'deny my credit to the testimony, that the deed. vague and indefinite-as it was, was read to Bunch. But there is no eV^ence that it was carefully explained to him, which seems requisite to his understanding it'; tho9 a witness entitled to credit, Mr. Brown, rather thought he did understand the purport of the deed. Nor can it be doubted from the testimony that Bunch was sober at the time of signing the deed ; nor that he, expressed some satisfaction at his bargain soon afterwards. But I cannot shut my eyes to the facts fully proved; that this man was foolish to imbecility, tho’ «ot to downright idiocy. That he was poor and in distress, and that there was a shocking and gross inadequacy.of price, in the transaction. If he knew the. extent of liis. rights, then his folly in parting, with them for nothing, more strongly marks his imbecility and his incapacity to take care of himself and his affairs. If he was kept,ignorant of his rights„^then , he transferred jjvithout,¡that full knowledge, w]j|ph a man ought to, hawe before he is stripped of Ms?property by such bargains. I am aware of the decisions that mere inadequacy of priqe is not sufficient to set aside a contract fairly made. (by a man of good understanding, not deceived or imposed, upon and conusant of his rights; and I subscribe to. them. For as a man in the plenitude of his free will,, may give away his property without any consideration, when not indebted, so he may dispose of it, for inadequate considerations. But even these cases say- a shocking inadequacy amounts to evidence of fraud. But I consider the case to he totally different, when a man remarkable for his weakness and folly and poverty, is induced to part with all. the property he is entitled to in the world to save him from starvation, by a sweeping deed, which he could not read, and which enumerated. Nothing particularly; for about a 60th or at most a 30th part of its value. I do think, gross inadequacy coupled with such circumstances ought to prevent any court of justice from sanctioning the deed. Certainly no court would *293 llave decreed, a specific execution .of such- an agreement \ and though that is not conclusive on the question in this shape,! it assists to form a right judgment. This court did; refuse its aid to enforce a contract specifically, in a case by no means so strong as the present. I mean the ease of Clitheral, vs. Ogilvie. It was well observed by the counsel, that the court will catch at slight circum? stances to .prevent such injustice. I am sensible, there is no direct : proof of fraud or imposition in the case under .consideration; except‘What grows out of the circumstances ;• and that Bunch, is •said to have first of-ferudAo make ibis-sale, and, had done so to others; and was.'S8-tis/ied'for some time -afterwards ; and it is said even,(gave a reason for it; which-however by M’-Kewa’á testimony appears, was not a correct one. But this o.niy shews the extent of -his weakness and incapacity.. He Was too feeble to require any efforts to catch him in the ¡toils; He was so much like a child as to lie fond of th-e toy for which lie sold his inheritance, or his valuable rights.'- It would be as tedious as unnecessary to review all the cases upon this subject.. And At is .not to be-denied, ¡that whilst at times, the courts ' have been induced to set aside Such, contracts and .conveyances from their indignation'«li-ttlie imposition practised, or the injustice produced ; at "¡other times they have for-hhrn to interfere,- Where. -there was no fraud, though gross inadequacy, from their reluctance to unsettle what was-: done willingly by a party conusant of his rights and competent to ¡act for himself and manage his affairs. Of the latter class, are ihencases of Wood, vs. Fenwick, Prec. in. Chan. 206, Williams and Jernegan, 2 Atk. 25. Nichols, vs. Gold, 2 Vesey, 422. Math, vs. Atwood, 5 Vesey, jun. 845. Of the former clasá,’ .are the cásea of Twisleton and Griffith; 1 P. Wm’s. 310. Clarkson and Hanway, 2. P. Wm’s. 203. Barnadiston and Lingood, 2 Atk. 133. How and Weldin, 2 Vesey, 518. Evans, vs. Lewellin, 2 Bro. C. C. 150. The substance of these last mentioned cases, is, that conveyances from weak men for small considerations, *294 mu°h below the value, in necessitous circumstances^, more especially if young heirs or seamen, and others selling contingent rights, not in possession; and espe-cialíy if obtained from men not fully conusant of their rights, (ad in 2 Bro. 150,) will be set aside. I. think those cases apply to and ought to govern the case before the court. And the case of Clitherall and Ogilvie', decided in onr own court is as strong as any of them. It was argued that there is a distinction between contracts executory and executed. That when they are executed^ this Coui’t will not interfere, though it will'in those which being executory, the party must come to this count to have it perfected. This distinction will not prevail against strong cases, with circumstances calling for the interposition of this court. But if it were admitted, what is the proof, that the deed, in this case was executed or executoi’y ? The wTitness says he cannot swear to the contents. It was to convey Bunch’s rights. Now these were in remainder. He had nothing then, of which he could make a direct conveyance; for though it was a property vested in interest, it was mot in. possession. The proper agreement in such a case them was executory, to wit: an agreement that the party would ■convey his property, when it came to his possession ; and We should be at liberty to argue, that the parties pursued the course, which jwas adapted to the nature of the interest to be conveyed : for the testimony does not fix it. But without resorting, to this refinement^-1 am of opinion, that as Bunch was a very weak man, of no --jvidgn^nt; utterly incompetent to act for himself in any mathy Of importance, and as he was a very needy -man, and as Jc is not certain that he was fully conusant of the ektfeij; if his righ ts, and of the property to which he was . .eptitle#, which was in expectancy only ; and as he has parte,/with those rights in the gross, without any enu-mfiration which could put him- on his guard 5 and as he could not read, and there is no proof of a full or fair explanation of the deed, though it was read to him; and as the conveyance is for a consideration so grossly in *295 adequate, that all good men would exclaim against it at the firát blush, this court is bound to interpose and to prevent the effects of such a deed, though there is no direct evidence of plain fraud in the case.
It was attempted to elude the force of these considerations, by shewing that Filbin had not considered this property as of great value, as he had afterwards sold the same property after Mrs.. M’Rbwin’s death to the defendant for a very small property, towit: a horse worth g> 50, as Filbin himself swore. To this several answers may be given. This act would not establish the fact of the small value of the property in question; for there is distinct evidence to prove the value, which though not great, is prodigiously above the consideration given. And I must say I doubt if we have obtained the whole truth of this transaction. For though the parol evidence said the consideration given by Hurst to Filbin was $ 50 ; the deeds afterwards produced, say $60; and what more was reserved, does not appear. And Filbin, upon being interrogated why he sold the property so low, gave very different reasons on his examination, and cross examination; for on the former, he said he had sold it so low, because of the worthlessness, or low value of the property; on the latter he said because he thought Hurst was best entitled to the property.
. Upon the whole of this case, I dp not think, that either of the defendant’s pleas have been supported. They must therefore be overruled.
.It is therefore ordered, and decreed, that the ant do account with the complainant for the slia; .real and personal, estate of the late Robert which his wife was entitled, under the will of t! Robert; to be administered by him, according Defendant to pay costs of suit,
.From this decree an appeal was made on the following grounds:.
Grounds of appeal.
*296 1st, That the defendant is distributee of complain, ant; intestate is entitled to retain bis proportion, and a reference to the master to ascertain the same should have been directed in the decree.
2d. That the decree is further exceptionable, inasmuch as it directs an account generally through a part of the personal property was sold on a credit with complainant's consent and the ordinary’s sanction.
3d. That the proof of the existence of the execution and contents of Bunch’s deed to Filbin was amply sufficient to preclude any objections on those accounts.
4th. That the inequality of consideration under all the circumstances of the case, was not that gross inadequacy which equity requires for the recision of a’ contract. Nor was the evidence of Bunch’s incapacity and weakness by any means such as to convert the above disproportionate agreement into an act of fraud or undue advantage.
5th. That although the solicitors may have consented to be heard on the bill and answer, yet defendant should not be thereby precluded from offering testimony to establish Bunch’s capacity, as he was taken unprepared and by surprise, not having had the most distant intimation that the deed was to have been impeached.
(Signed,) Smith & Bacot, appell’ts sol’rs.
The appeal was heard on the 20th March, 1812, by the Chancellors Thompson, Dbsaussure, Gaillarb and WAT&S.
'• It was argued by Mr. Grimes and Mr. W.X,Smith for the appellants, and by Mr. Joining arid Mr. Prin-gle for the respondent.
The ¡Court after deliberation made the following order:
The.-decree in this ca'se is affirmed for the reasons therein assigned.
Signed by Wadby Thompson-, Henry W. Desaus-.-sure, Theodore! Gaillarb, Thomas Watíbs.
The first ground of appeal is founded in error. The general order of rgierrenee jji the deerea submits s^l the accounts to the master, who *297 reports on tbe accounts and the portions due to each of the lielrs. The last ground of appeal was also founded in mistake. The defendant was not precluded from offering testimony. Both parties Went to trial vo-luntóly, and after the complainant had gpne through his evidence, the defendant’s counsel expressed a Wish to postpone the case, on the ground of surprise on the question of Bunch’s weakness of understanding; but they made no motion, and offered no affidavit. The Court thought it would be dangerous to permit one party to hear the whole of the evidence of the other party, and. then postpone the ca-.<* in order to give him time to counteract it.

 Schoate and Lefroy, 2.09, 222.